UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | On appeal from the U.S. Bankruptcy |
| MACK INDUSTRIES LTD., | ) | Court for the Northern District of |
| *et al.*, | ) | Illinois, Eastern Division |
| | ) | |
| Debtors. | ) | Bankruptcy Case No. 17-B-09308 |
| | ) | |
| | ) | |
| ARIANE HOLTSCHLAG, | ) | District Court Case No. 1:22-CV-06509 |
| As chapter 7 Trustee for | ) | |
| Mack Industries Ltd., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Judge Edmond E. Chang |
| v. | ) | |
| | ) | |
| ADVANCED HOME REMODELING | ) | |
| INC., | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

From 2013 to 2017, Mack Industries hired Advanced Home Remodeling to renovate several hundred houses and paid Advanced millions of dollars for this work. R. 14, Marion Aff. ¶¶ 10, 23, 30; R. 14, Am. Compl. ¶ 1.[1] But after Mack filed for bankruptcy, its Chapter 7 Trustee sought to recover around $2 million of these payments, arguing that the transfers constituted constructive and actual fraud. R. 15, MSJ Opinion at 2. The Trustee also contended that a separate $30,000 payment that Mack made to Advanced should be avoided because it was a preferential transfer. *Id.*

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Advanced then moved for summary judgment against all three of these claims. MSJ Opinion at 1–2. The Bankruptcy Court granted that motion. *Id.* at 2. Mack now appeals, arguing that Advanced is not entitled to summary judgment. R. 13, Appellant's Br. at 22. Even when the evidence is viewed in the Trustee's favor, however, Advanced is entitled to summary judgment. Advanced provided reasonably equivalent value for Mack's payments and took the payments in good faith, and the $30,000 payment was a loan advance, not a preferential transfer. So the Bankruptcy Court's summary judgment order is affirmed.

## I. Background

Mack Industries was in the business of flipping houses: it would buy or lease real estate, renovate the properties, and then sell or rent them to generate revenue. R. 14, McClelland Aff. ¶ 5. To help with the renovations, Mack hired several construction contractors, one of which was Advanced Home Remodeling. *Id.* ¶¶ 64–65.

Starting in 2013, Mack contracted with Advanced to perform rehab construction work on numerous properties. Marion Aff. ¶ 10. Whenever Mack had a job for Advanced, Mack would send Advanced a construction contract, specifying the scope and price of the project. *Id.* ¶¶ 11–12. Advanced would then hire subcontractors and complete the requested work. *Id.* ¶ 17. Once the work was done, Advanced would submit an invoice to Mack, and Mack would pay the full invoiced amount. *Id.* ¶¶ 24, 26. From 2013 to 2017, Advanced performed renovation work for Mack on more than 400 homes and received millions of dollars in payments for that work. Am. Compl. ¶ 83; Marion Aff. ¶ 23.

2

After Mack filed for bankruptcy in 2017, its Chapter 7 Trustee sought to avoid around $2 million of the construction-work payments that Mack had made to Advanced, arguing that these payments qualified as constructive and actual fraud. MSJ Opinion at 2. The Trustee also sought to avoid as a preferential transfer a separate $30,000 payment that Mack made to Advanced a few months before filing for bankruptcy. *Id.* Advanced then moved for summary judgment against the constructive fraud, actual fraud, and preferential transfer claims.[2] *Id.* at 1–2. The Bankruptcy court Granted that motion, concluding that Advanced provided reasonably equivalent value to Mack for the payments, that Advanced received the payments in good faith, and that the $30,000 payment was a loan advance, not a preference. *Id.* at 19–20. The court also denied the Trustee's request to amend her complaint, explaining that she provided no rationale for why amendment was necessary. *Id.* at 22. The Trustee now appeals, seeking to reverse the bankruptcy court's grant of summary judgment. Appellant's Br. at 22.

## II. Standard of Review

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court under 28 U.S.C. § 158(a). In reviewing the bankruptcy court's decision to grant summary judgment, the Court's review is *de*

---

[2] The Trustee brought her fraud claims under both the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act. But the elements of the claims and the standards that apply in evaluating those claims are essentially the same under both federal and Illinois law. *Baldi v. Samuel Son & Co.*, 548 F.3d 579, 581 (7th Cir. 2008). So the Court's analysis of the Bankruptcy Code in this Opinion also applies to the Trustee's Illinois state law claims.

3

*novo*, applying the same standard for summary judgment that the Bankruptcy Court applied. *See Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006).

"The standards of Rule 56 of the Federal Rules of Civil Procedure apply to summary judgment in bankruptcy proceedings." *Id.* (cleaned up).[3] So "summary judgment should not be granted unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Finally, the Court reviews "the bankruptcy court's factual findings for clear error and its legal conclusions de novo." *Dick*, 458 F.3d at 577 (cleaned up).

### III. Analysis

#### A. Constructive Fraud

The Trustee begins by arguing that Advanced did not give Mack "reasonably equivalent value" for the payments that Advanced received, so the Bankruptcy Court

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

incorrectly granted Advanced summary judgment on the constructive fraud claim. Appellant's Br. at 22. This argument is unsuccessful.

To avoid the payments to Advanced based on constructive fraud, the Trustee must show that Mack "received less than a reasonably equivalent value in exchange for such transfer[s]." 11 U.S.C. § 548(a)(1)(B)(i). Under the Bankruptcy Code, "value" means the "satisfaction … of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). And a debtor repaying its own antecedent loan or debt qualifies as getting "reasonably equivalent value." *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 478 (7th Cir. 2005) . Here, Mack hired Advanced to perform renovation construction work on homes, Advanced successfully completed that work as requested, and then Advanced invoiced Mack for the cost of the work. Marion Aff. ¶¶ 24, 26. Under the parties' contracts, Mack was obligated to pay Advanced the amount in these invoices. *Id*. ¶¶ 11–12, 23–29. So, put another way, all of Mack's transfers to Advanced were repayments of antecedent debt that Mack owed Advanced for the construction work it completed. And the Trustee does not claim that the amounts in the invoices were unfair or unreasonable prices for the work that Advanced performed. *See* Appellant's Br. at 22–28. Mack thus received reasonably equivalent value for the payments it made to Advanced, defeating the constructive fraud claim.

The Trustee counters that Mack did not get any value from its payments because Mack did not own the properties that Advanced worked on. *Id*. at 25. So the Trustee says that although Mack hired Advanced to do the work, it was the property owners—rather than Mack—that received the value in the transaction. *Id*. at 25–26.

This argument misunderstands how courts must evaluate reasonably equivalent value. The inquiry is "directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost." *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1991) (cleaned up). And in assessing value, the "question is not whether the debtor subjectively benefitted" from the services it received; "the operative question is whether the … services provided had objective value." *In re Caribbean Fuels Am., Inc.*, 688 F. App'x 890, 894–95 (11th Cir. 2017). Here, Mack incurred a debt obligation to Advanced by hiring it to complete renovation work. By paying Advanced for the work, Mack received the benefit of satisfying its antecedent debt obligation, regardless of whether Mack owned the renovated properties. Plus, Advanced's work had objective value—the company successfully renovated hundreds of homes. McClelland Aff. ¶ 84. So Advanced provided reasonably equivalent value to Mack, and the Trustee's constructive fraud claim fails.

Next, the Trustee suggests that regardless of whether the money *transfers* were constructively fraudulent, the underlying *obligations* (Mack entering into contracts with Advanced) were constructively fraudulent and should be avoided. Appellant's Br. at 26–28. Specifically, the Trustee claims that the contracts with Advanced can be avoided because they provided no value to Mack. *Id.* at 27. But just like with the payments, the obligations cannot be avoided. The definition of "value" under the Bankruptcy Code is the same for claims to avoid obligations as it is for claims to avoid transfers. 11 U.S.C. § 548(d)(2)(A). So the reasoning explained above also applies here. It is irrelevant whether Mack owned the buildings that Advanced worked on.

6

Advanced satisfied its contractual obligations to Mack and provided objective value by renovating the homes; it does not matter whether Mack received subjective value from the renovations. The contractual exchange, like the payments, provided both sides with reasonably equivalent value, so the obligations were not constructively fraudulent. The Bankruptcy Court correctly granted summary judgment to Advanced on the Trustee's constructive fraud claim.

### B. Good Faith Affirmative Defense

The Bankruptcy Court also concluded that Advanced was entitled to summary judgment on both the constructive and actual fraud claims because Advanced provided value in good faith for each transfer that it received from Mack. MSJ Opinion at 9. Under the Bankruptcy Code, a transfer is *not* avoidable based on either actual or constructive fraud if the transferee provided value in exchange for the transfer and took it in good faith. 11 U.S.C. § 548(c). So if Advanced meets those two requirements, it is entitled to summary judgment on the Trustee's actual *and* constructive fraud claims. As explained above, Advanced did provide reasonably equivalent value for Mack's payments, so the first requirement is satisfied. The remaining question is whether Advanced took those payments in good faith. It did, so the fraud claims fail.

To determine if a transferee took transfers in good faith, courts ask whether the transferee had "inquiry notice" that the payments were fraudulent or were connected with some wrongdoing. *In re Sentinel Mgmt. Grp., Inc.*, 809 F.3d 958, 961 (7th Cir. 2016) (cleaned up). A transferee has inquiry notice if it is "aware[] of suspicious facts that would have led a reasonable firm, acting diligently, to investigate further

7

and by doing so discover wrongdoing." *Id*. On the other hand, a "transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own." *Bonded Fin. Servs. Inc. v. European Am. Bank*, 838 F.2d 890, 898 (7th Cir. 1988). Though it is a closer call than the other issues on appeal, based on the evidence here, and even viewing it in the Trustee's favor, no reasonable factfinder could conclude that Advanced had inquiry notice of any potential fraud by Mack.

An affidavit from Advanced's former president, Michael Marion, clearly demonstrates that Advanced had no knowledge of suspicious facts. In the affidavit, Marion explains that the construction work contracts that Mack would send to Advanced stated that Mack Companies was the client and that Advanced would be renovating a house for Mack Companies. Marion Aff. ¶ 16. And he states that Mack never gave Advanced any information about the ownership of the houses that Advanced was hired to renovate. *Id*. ¶¶ 20–22. Thus, if Mack committed any fraud regarding the ownership of the properties, Advanced had no clues about it—and no record evidence shows otherwise. Next, Marion confirms that he had no knowledge that Mack's largest creditor, American Residential Leasing, filed a lawsuit against Mack, alleging fraud. *Id*. ¶ 32. And he also says that he did not know about any potentially fraudulent statements that Mack made to American Residential Leading during their contract negotiations. *Id*. ¶ 34. So if Mack did defraud American Residential Leasing, Advanced knew nothing about it when receiving payments from Mack. Advanced did

8

not have inquiry notice of any potential wrongdoing by Mack and received the transfers in good faith.

The Trustee does not offer any direct evidence to counter or undercut the Marion affidavit. Rather than provide an affidavit of its own, the Trustee points to a few disparate facts that it says show that Advanced had inquiry notice. It is true that circumstantial evidence can establish the basis for a finding of inquiry notice. But even viewing those facts in the light most favorable to the Trustee, here they are not enough to show that Advanced should have investigated potential wrongdoing by Mack.

First, the Trustee points to testimony by Marion, stating that he was generally aware that he could assert a mechanics lien on the renovated properties if Mack did not pay Advanced. MSJ Opinion at 15. But the testimony does not say that Advanced ever did place a mechanics lien on one of these properties or even considered doing so. R. 14, Marion Dep. at 92–93. Marion's general awareness about mechanics liens does not mean that he suspected or had reason to believe that Mack would not pay for the work that Advanced did. *Id.* And this fact does not suggest that Marion had information about potential fraud.

Second, again citing Marion's testimony, the Trustee says that Advanced did some renovation work on the personal homes of the family members who own Mack, which should have tipped Advanced off about potential fraud. MSJ Opinion at 16. That sort of personal side-business can be suspicious in certain circumstances. Here, however, Marion testified that Advanced just did a "little bit of floor" work at one of

9

the homes and did a minor tile-repair job at another home. Marion Dep. at 98–99. That scant personal work pales in comparison to the more than $16 million in total renovation work that Advanced performed for Mack. Am. Compl. ¶ 1. So those two small projects were a drop in the bucket when put in the context of the overall relationship between Mack and Advanced and were too minor to have reasonably alerted Advanced that Mack may have been engaging in fraud. Plus, the Trustee does not offer evidence that Mack, rather than the family members themselves, paid for the work that was completed. *See* Marion Dep. at 98–99; MSJ Opinion at 16; Appellant's Br. at 31–32. Advanced thus had no reason to think that being hired to complete this work was a red flag. Again, the Trustee's evidence is not enough to create a genuine dispute about inquiry notice.

Third, the Trustee contends that Marion and one of Mack's executives, Jim McClelland Jr., were close friends and discussed Mack's financial issues. MSJ Opinion at 16–17. But the Trustee's main evidence supporting this contention is that Marion and Jim Jr. played in a pick-up basketball group together. *Id*. The fact that they played hoops together does not establish that they were close friends, let alone that Advanced was on inquiry notice. Marion Dep. ¶¶ 5–6. And even if Jim Jr. mentioned Mack's financial issues to Marion when they were together, the fact that Mack was struggling would not alert Marion or Advanced that Mack was potentially engaging in fraud. So once again, the Trustee does not present evidence that would allow a reasonable factfinder to conclude that Advanced had inquiry notice of any potential wrongdoing by Mack. The Bankruptcy Court correctly concluded that Advanced's

10

good-faith affirmative defense succeeds and that Advanced is thus entitled to summary judgment on the constructive and actual fraud claims on that basis too.

### C. Preference Claim

In addition to Mack's construction work payments, the Trustee also seeks to recover $30,000 that Mack transferred to Advanced 80 days before Mack filed its bankruptcy petition. MSJ Opinion at 20. The Trustee argues that this transfer is avoidable as a preference. *Id.* Section 547(b) of the Bankruptcy Code allows a trustee to avoid a debtor's transfer to a creditor on account of an existing antecedent debt that was made while the debtor was insolvent and within 90 days before the petition date. But loans and loan advances are not considered transfers on account of antecedent debts because they are not payments made to satisfy debts that were incurred before the transfer was made. *See In re Bridge Info. Sys.*, 474 F.3d 1063, 1067–68 (8th Cir. 2007). And the Trustee herself notes that Mack's $30,000 transfer was a loan advance. Am. Compl. ¶ 115. So the payment is not avoidable under § 547(b). Moreover, as the Bankruptcy Court correctly noted, the Trustee has failed to produce evidence supporting any element of the preference claim that she alleges. *See* Appellant's Br. at 34–36. Thus, Advanced is also entitled to summary judgment on this claim.

Finally, the Trustee seeks to again amend the operative complaint. *Id.* at 36. But the Bankruptcy Court properly denied that request because the Trustee does not provide a valid reason for amendment. *Id.* at 36–37. Plus, by the time of the request to amend, more than six years has passed since Mack's bankruptcy case was filed, so

the Bankruptcy Court reasonably concluded that further delay was not justified. MSJ Opinion at 22. The decision to reject the Trustee's request for leave to amend is affirmed.

## IV. Conclusion

The Bankruptcy Court's November 10, 2022, order granting Advanced summary judgment on all of the claims in the amended complaint is affirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 20, 2025